UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------
:
MARK A BAUER : CASE NO. 1:07-00805-JG
:
      Plaintiff, : JUDGE JAMES S. GWIN
:
vs. : OPINION AND ORDER
: [Resolving Doc. 20]
MICHAEL ASTRUE, Commissioner of :
Social Security :
:
      Defendant. :
:
-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

The Plaintiff Bauer objects to the Magistrate Judge's Report and Recommendation affirming the Administrative Law Judge's decision to deny him social security benefits. [Doc. 20.] Bauer moves this Court to reject the Report and Recommendation and reverse the ALJ's decision. [Doc. 20.] For the reasons stated below, this Court **ADOPTS** the Recommendation of the Magistrate Judge, and **AFFIRMS** the Administrative Law Judge's decision.

**I. Background**

On March 19, 2007, the Plaintiff Bauer brought this civil action against the Commissioner of Social Security seeking review of the ALJ's disability benefits' denial. [Doc. 1.] In contesting the benefits' denial, Bauer says that the ALJ failed to give the appropriate weight to the treating physician's opinion on his mental impairments. [Doc. 14 at 10.] An ALJ must give a treating physician's opinion "conclusive weight" when the testimony is well-supported and is not inconsistent

Case No. 1:07-cv-00805
Gwin, J.

with other substantial evidence. 20 C.F.R. 404.1527(d)(2). When the opinion is not entitled to conclusive weight, an ALJ must generally give "more weight" to a treating physician's opinion. § 404.1527(d)(2). While "more weight" is the general rule, an ALJ will weigh a treating physician's opinion in light of the length and nature of the treatment relationship, the support for and consistency of the opinion, the specialization of the treating physician, and other factors. §404.1527(d)(2)(i) - (d)(2)(ii), (d)(3) - (d)(6).

*I.A. Facts: the Plaintiff's claims and the ALJ's decision.*

Between 1991 and 2004, Bauer held several jobs: "administrative service assistant, house manager in a group home, radio announcer, house supervisor, cook, parts manager, service manager, commissary staff, dispatched, office manager, dispatch supervisor, electronic data entry, newspaper delivery district manager, truck driver and service manager." [Doc. 14-2 at 1.]

During that time, in July of 2003, Bauer began experiencing some of the mental impairments that he based part of his claim for disability. [R. 233.] Bauer did not file for disability, however, until July 2005. In that application, he claimed that his disability began on December 26, 2004 when he was injured after a fall. [Doc. 14-2 at 1; R. 441.] The Agency denied his initial application and denied his application again on reconsideration. [R. 410-414.] Bauer then requested a hearing on his application. [R. 32.]

At the hearing, the ALJ found that Bauer had several severe physical impairments: "right carpal tunnel syndrome; diabetic neuropathy, bilateral, lower extremities; and DDD of the lumbar spine." [R. 9.] The ALJ also found that Bauer had severe mental impairments: "depressive disorder,

Case No. 1:07-cv-00805
Gwin, J.

and personality disorder." [R. 9.] Relying on the testimony of a vocational expert,[1/] the ALJ also found that, with these impairments, Bauer still had "residual functional capacity."[2/]

The ALJ made this finding on residual functional capacity despite the opinion of Bauer's treating physician, Dr. Haglund, that Bauer "had marked [mental] impairments that would preclude him from engaging in full time employment." [R. 11.]

The focus of Bauer's challenge to the ALJ's decision is the weight the ALJ gave to the treating physician's opinion. Bauer says that, if the ALJ had given the appropriate weight to Dr. Haglund's opinion, the ALJ could not have found residual functional capacity and therefore should have granted disability status. *See* note 1. To answer this challenge, this Court will detail Dr. Haglund's opinion and the countervailing evidence the ALJ considered.

*I.B.   Dr. Haglund's Opinion: the ALJ finds the opinion unsupported by Dr. Haglund's treatment notes and inconsistent with other substantial evidence.*

Dr. Haglund, a psychologist, regularly treated Bauer for his mental conditions. Bauer saw Dr. Haglund every two weeks for nearly two years. [R. 453, 323; Doc. 14 at 12.] In a form detailing Bauer's work limitations related to his psychiatric state, Dr. Haglund stated that Bauer's "ability to maintain attention and concentration for extended periods" was "markedly impaired," and that his "ability to complete a normal workday and workweek without interruptions from psychologically

---

[1/] The ALJ asked the vocational expert two hypothetical questions on Bauer's ability to work. The first question proposed a hypothetical individual with Bauer's limitations excepting those described in Dr. Haglund's opinion. The vocational expert answered that the hypothetical individual could perform Bauer's past relevant work. [R. 481-482.] A second hypothetical incorporated Dr. Haglund's limitations. The vocational expert answered that the hypothetical individual could not engage in Bauer's past relevant work. [R. 481-482.]

[2/] The ALJ found that Bauer had residual functional capacity "to lift and carry a maximum of 50 pounds occasionally and 25 pounds frequently; sit, stand, or walk 6 hours, each, per workday; push and pull within the 50 pound weight limitation; he is precluded from production quota work or piece work and is limited to superficial interaction with co-workers and the public, without negotiation on [sic] confrontation."

Case No. 1:07-cv-00805
Gwin, J.

based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods" was "extremely impaired." [R. 393.]

The ALJ"d[id] not accept the opinion." [R. 11.] In declining to give controlling weight to this opinion, the ALJ noted that Dr. Haglund's own treatment notes did not support the opinion. As the Magistrate Judge observed, Dr. Haglund's notes

> contain frequent references that Bauer is stable, [R. 247, 249, 259, 305, 307, 308, 323, 334], functioning adequately, [R. 260, 262, 303, 305, 309, 335], or coping reasonably well, [R. 263, 311]. In only one note does the psychologist observe "struggling to maintain functioning." [R. 264.]

[Doc. 19 at 6.]

The ALJ also pointed to other evidence in the record inconsistent with Dr. Haglund's opinion. First, the ALJ examined Bauer's own testimony. Bauer testified that he was moderately active in raising his children: they were with him about 65% of the time; he was "primarily responsible" for monitoring his daughter's medically required special diet; and he was, "to some extent," along with his girlfriend, involved in his children's "getting up and getting ready." [R. 459-462.] Bauer had also spent time writing a television script that apparently had some promise. [R. 309.]

Second, the ALJ noted that a State Agency psychologist reviewed Bauer's file after the time that Bauer claims his disability began. The psychologist concluded that Bauer had "moderate difficulties in maintaining social functioning" and "moderate difficulties in maintaining concentration, persistence, or pace." [R. 284.] The State Agency psychologist, however, stated that, "[p]er . . . Dr. Haglund[, Bauer] is stable and compliant." [R. 278.]

Third, the ALJ relied on Dr. Huerta's assessment of Bauer. Bauer saw Psychiatrist Huerta around every two to three months to manage his medications. [R. 452-454.] In his evaluation of

Case No. 1:07-cv-00805
Gwin, J.

Bauer, Dr. Huerta stated that Bauer was "markedly depressed and his affect [wa]s blunted." [R. 299.]

But again, in the same report, Dr. Huerta observed that,

> The patient appears well developed, moderately obese man, who is casually dressed. His speech is clear, coherent as well as relevant. He's oriented to time, place and person. He can perform simple and complex calculations accurately. He can deal with similarities an [sic] abstractions. His general fund of information is good.

[R. 299.]

Fourth, the ALJ examined the testimony of the medical expert Dr. Goren. Dr. Goren testified that he had reviewed Bauer's medical record and found no support for Dr. Haglund's opinion. [R. 468.] Dr. Goren testified that Bauer was "moderately impaired and not markedly or extremely impaired as Dr. Hagland [sic] indicated." [R. 468.]

After laying out the above reasons for giving little weight to Dr. Haglund's opinion, the ALJ held that Bauer was "not under a 'disability,' as defined in the Social Security Act" because Bauer's residual functional capacity would allow him to complete past relevant employment. [R. 10, 13.]

*I.C. Procedural History*

Bauer appealed the ALJ's decision to the Appeals Council. The ALJ's decision became final when the Appeals Council denied review. [Doc. 16 at 3.] Bauer then instituted the present action pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3) of the Social Security Act ("the Act"), which provide for judicial review of any final decision by the Commissioner of Social Security denying disability or supplemental security income benefits [Doc. 1.] The Complaint was automatically referred to a Magistrate Judge. [Doc. 5.] The Magistrate Judge issue a Report and Recommendation affirming the ALJ's decision denying Bauer benefits. [Doc. 20.]

**II. Analysis**

Case No. 1:07-cv-00805
Gwin, J.

The Federal Magistrates Act requires a district court to conduct *de novo* review of the claimant's objections to a report and recommendation. 28 U.S.C. § 636(b)(1). This section will first articulate the standard of review on *de novo* analysis of objections, and then address Bauer's objections.

*II.A.  De Novo Review: the substantial evidence standard governs this Court's review of the ALJ's decision.*

This Court's review is limited to determining whether the ALJ's decision is "supported by substantial evidence and was made pursuant to proper legal standards." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (citing 42 U.S.C. § 405(g); *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consol. Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)). Put differently, it is "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Comm'r of Soc. Sec.,* 105 F.3d 244, 245 (6th Cir. 1996). When substantial evidence supports the ALJ's decision, a court may not reverse, even if the court would arrive at a different conclusion than the ALJ. *Siterlet v. Sec. of Health and Human Servs.*, 823 F.2d 918, 920 (6th Cir.1987). This Court may not review "the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler,* 745 F.2d 383, 387 (6th Cir. 1984).

Nevertheless, even where "substantial evidence otherwise supports the decision of the Commissioner, . . . reversal is required [if] the agency failed to follow its own procedural regulation, and the regulation was intended to protect applicants . . ." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

-6-

Case No. 1:07-cv-00805
Gwin, J.

*II.B. Bauer's Objections: Bauer objects to the ALJ's assessment of the treating physician's opinion.*

In challenging the ALJ's decision and objecting to the Magistrate Judge's Report and Recommendation, Bauer says that (1) the ALJ gave too little weight to the treating physician's opinion,[3] and (2) the ALJ's decision was not supported by substantial evidence. [Docs. 1, 20.]

*II.B.1. Treating Physician: the ALJ reasonably found that the treating physician's opinion was not well-supported and was inconsistent with other substantial evidence.*

An ALJ must give a treating physician's opinion "controlling weight" when the opinion is well-supported and is not inconsistent with other substantial evidence. 20 C.F.R. 404.1527(d)(2). This deferential standard is "commonly known as the treating physician rule." *Rogers*, 486 F.3d at 242 (citing *Wilson*, 378 F.3d at 544).

When the ALJ does not give the treating physician's opinion controlling weight, the ALJ still generally affords the treating physician's opinion "more weight." 20 C.F.R. § 404.1527(d)(2). The ALJ can adjust this "more weight" presumption, the ALJ in light of the length and nature of the treatment relationship, the supportability and consistency of the opinion, the specialization of the treatment physician, and other factors. § 404.1527(d)(2)(i) - (d)(2)(ii), (d)(3) - (d)(6). The ALJ need not give deference to a treating physician's conclusory statement that a claimant is disabled. *See Schuler v. Commissioner*, 109 Fed. Appx. 97, 101 (6th Cir. 2004).

*II.B.1.a. Well-Supported: the ALJ reasonably concluded that the treating physician's opinion was not well-supported.*

---

[3] Although not entirely clear, Bauer also appears to make a procedural objection. Bauer says "[t]here is no good reason *identified* by the ALJ for his decision to credit the opinion of the non-examining physician over the treating psychologist." (emphasis added) [Doc. 20 at 6]; *see Rogers v. Commissioner*, 486 F.3d 234, 242-243 (6th Cir. 2007). Here, however, the ALJ noted the several sources he relied upon: Dr. Haglund's treatment notes, Bauer's testimony, the State Agency psychologist, Dr. Huerta's treatment notes, and Dr. Goren's testimony. [R. 12.] This extensive discussion satisfies the procedural "good reasons" requirement.

Case No. 1:07-cv-00805
Gwin, J.

Here, the ALJ found that the opinion was not supported by Dr. Haglund's own treatment notes. As aptly noted by the Magistrate Judge, Dr. Haglund's treatment notes were replete with suggestions that Bauer had been adequately functioning. Notably absent, however, were indications in the notes consistent with Dr. Haglund's ultimate opinion.

Bauer's testimony contained some support for Dr. Haglund's opinion. The testimony indicated that Bauer was unsure whether his mental condition would prevent him from caring for his daughter, [4] but also that he was "primarily responsible" for taking care of his daughter's special diet. [R.461.] He also got up "80 percent of the time . . . and [made] sure that [his] girls [we]re getting up and getting ready," but "[couldn]'t actively participate in a lot of that." [R. 460.]

Dr. Huerta's notes on Bauer also contained some support for Dr. Haglund's opinion. The notes stated that Bauer was "markedly depressed and his affect [wa]s blunted." But Dr. Huerta included this characterization of Bauer within a paragraph that stated, "[Bauer's] speech is clear, coherent as well as relevant," and "[h]is judgment is adequate." [R. 299.]

Dr. Haglund's notes contained almost no support for his ultimate opinion. Bauer's testimony and Dr. Heurta's notes contained some support, but this support was substantially undercut by the contemporaneous statements inconsistent with Dr. Haglund's opinion. The ALJ, therefore, reasonably concluded that Dr. Haglund's opinion was not well-supported.

*II.B.1.b. Inconsistent with Other Substantial Evidence: the ALJ reasonably*

---

[4] The transcript states,

Q: An with respect to your daughter, I mean, if she need to go to West Lake to have her blood test, I mean, you would take her regardless of whatever concerns you had abut dealing with the outside world, isn't that correct?

A: I wish I could say that was true, Your Honor.
[R. 461.]

Case No. 1:07-cv-00805
Gwin, J.

> *concluded that the treating physician's opinion was inconsistent with other substantial evidences.*

As mentioned above, Haglund's notes, Dr. Huerta's notes, and Bauer's testimony (albeit with some equivocation) all contained statements inconsistent with Dr. Haglund's opinion. Additionally, the medical expert Dr. Goren testified that he had reviewed Bauer's medical record and found no support for Dr. Haglund's opinion. [R. 468.] Dr. Goren testified that Bauer was "moderately impaired and not markedly or extremely impaired as Dr. Hagland [sic] indicated." [R. 468.]

Bauer accurately notes that Dr. Goren based his opinion in part on an assessment by clinician Jennifer Sunday that predates the time when Bauer claims his disability began. [R. 469; Doc. 20 at 4-5.] This finding, however, does not remove all reliability from Dr. Goren's testimony. Clinician Sunday's report identified many of the same mental impairments on which Dr. Haglund made his ultimate opinion. Additionally, Dr. Goren stated that he based his opinion on "the whole record," which predictably included treatment notes from before the time when Bauer claimed his disability began. [R. 469.]

A reasonable mind could have found that this relevant evidence was adequate to support a conclusion that the record was inconsistent with Dr.Haglund's testimony.

> *II.B.1.c. More Weight Factors: the ALJ reasonably afforded little weight to the treating physician's opinion.*

The ALJ stated that he "d[id] not accept" Dr. Haglund's opinion that Bauer's mental impairments would preclude him from engaging in full time employment. [R. 11.] The ALJ did this without explicit mention of the "more weight" factors listed in the administrative regulation. 20 C.F.R. § 404.1527. The ALJ, while not explicit, appropriately focused on supportability and consistency. For the reasons noted above in examining whether the opinion was well-supported and

Case No. 1:07-cv-00805
Gwin, J.

consistent with the record, a reasonable mind could have found adequate relevant evidence to reject Dr. Haglund's opinion.

This Court holds that a reasonable mind could have found the relevant evidence adequate to support the conclusions that, (1) the treating physician's opinion was not "well-supported," and (2) the treating physician's opinion was inconsistent with other substantial evidence. Accordingly, this Court holds that the ALJ did not err in declining to accept the treating physician's opinion.

*II.B.2 Supported by Substantial Evidence*

For the reasons noted above in assessing whether substantial evidence was inconsistent with the opinion of the treating physician, this Court holds that substantial evidence supports the ALJ's conclusion that Bauer does not qualify for benefits under the statute.

### III. Conclusion

For the reasons stated above, the Court **ADOPTS** Magistrate Judge's Report and Recommendation and **AFFIRMS** the decision of the ALJ.

IT IS SO ORDERED.


Dated: September 29, 2008          *s/    James S. Gwin*
                                   JAMES S. GWIN
                                   UNITED STATES DISTRICT JUDGE